# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF KENTUCKY
### NORTHERN DIVISION
### AT COVINGTON

**CRIMINAL ACTION NO. 08-49-DLB**

**UNITED STATES OF AMERICA**                                    **PLAINTIFF**

**v.**                       **REPORT AND RECOMMENDATION**

**JEFFREY SULLIVAN**                                             **DEFENDANT**

\* \* \* \* \* \* \* \* \* \*

On March 25, 2016, this matter came before the Court for a Final Revocation Hearing on the United States Probation Office's Report that Defendant Jeffrey Sullivan had violated conditions of his supervised release. Defendant was present in Court and represented by Steven Howe, and the Government was represented by Assistant United States Attorney Anthony J. Bracke (AUSA Bracke). The proceeding was electronically recorded and is contained in the Court's audio file at KYED-COV_2-08-cr-49-DLB-CJS-003-20160325-131531; the official record of this proceeding was certified by Linda Tierney, Deputy Clerk. After taking testimony as discussed below and hearing argument of counsel, the matter was taken under submission by the undersigned for preparation of a Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B) and 18 U.S.C. § 3401(i); *see also United States v. Waters*, 158 F.3d 933, 936 (6th Cir. 1998).

On May 5, 2016, the Court held a Status Conference in this matter to obtain an update on Defendant's continued supervision and to clarify certain factual information. Defendant, his counsel,

and the AUSA were present at this Conference.[1]  For the reasons that follow, it will be recommended that Defendant's supervised release be **modified** to include, in addition to the standard and special conditions already imposed, a new condition that he serve 14 weekends of intermittent confinement at a Bureau of Prisons approved facility closest to his home.  The confinement is to be served on an every other weekend basis to accommodate his parenting and work schedules.  In addition, the Probation Officer shall direct Defendant to attend a substance abuse treatment program.  (R. 349, at 4).

I.    **Background**

Defendant pleaded guilty in this matter to one count of conspiracy to distribute cocaine base and one forfeiture count.  (R. 130).  On March 3, 2011, the presiding District Judge sentenced Defendant to a total term of imprisonment of 84 months with an 8-year term of supervised release to follow.  (R. 347, 349).  On December 24, 2014, Defendant was released to begin his 8-year term of supervised release.  (R. 458).

On January 16, 2015, Defendant was stopped by police officers while operating his motor vehicle and cited for improper lane change, child restraint violation and possession of less than 2 ounces of marijuana.  (R. 414).  Defendant timely reported the incident to his Probation Officer, who reported the violation to the presiding District Judge and recommended no action at that time as the charges were pending, but noting the Probation Officer would report back with further recommendations. (*Id*.).  The District Judge adopted the Probation Officer's recommendation. (*Id*.). The Probation Officer later reported to the presiding District Judge that the charges had been

---

[1]The Status Conference was electronically recorded and is contained in the Court's audio file at KYED-COV_2-08-cr-49-DLB-CJS-003-20160505-152414; the official record of the Conference was certified by Deputy Clerk Tierney.

dismissed and that Defendant told the Probation Officer that his sister, a passenger in the vehicle, claimed ownership of the marijuana. (R. 416). The Probation Officer recommended no further action, and the District Judge concurred. (*Id*.).

On October 7, 2015, the Probation Officer reported to the District Judge that Defendant had submitted urine specimens on August 12, 2015, August 28, 2015, September 1, 2015, September 8, 2015, and September 14, 2015, that all tested positive for marijuana. (R. 449). Defendant initially claimed to have smoked marijuana once, on or about August 11, 2015, but an interpretation report from Alere Toxicology indicated that Defendant is believed to have reused marijuana prior to the collection on August 28, 2015. The Probation Officer reported to the presiding District Judge that Defendant was attending weekly group treatment at IKRON Inc., submitting to weekly random urine screens and was working towards getting his license as a barber. (*Id*.). The Probation Officer recommended Defendant remain on supervised release pursuant to the exception to revocation clause, which the presiding District Judge agreed to adopt, finding Defendant could benefit from continued substance abuse treatment.[2] (*Id*.).

Defendant now stands before the Court charged with the following violations:

**Violation No. 1:**   The Defendant shall not associate with any persons engaged in criminal activity and shall not associate with any person convicted of a felony, unless granted permission to do so by the probation officer.

**Violation No. 2:**   The Defendant shall notify the probation officer within 72 hours of being arrested or questioned by a law enforcement officer.

---

[2]As noted below, although the report indicated Defendant would be sent to treatment, the Probation Officer later testified at the Final Revocation Hearing and the Status Conference that Defendant was not in fact placed in treatment, but that treatment had been offered to him.

**Violation No. 3:**     The Defendant shall refrain from excessive use of alcohol and shall not purchase, possess, use, distribute, or administer any controlled substance or any paraphernalia related to any controlled substances, except as prescribed by a physician.

(R. 458).

### A.     Evidentiary Hearing

### 1.     United States Probation Officer Shawn Donoho

During the evidentiary hearing, Shawn Donoho, the United States Probation Officer charged with supervising Defendant, testified he began supervising Defendant upon his release from the Bureau of Prisons on December 24, 2014.  Officer Donoho explained that on January 8, 2015, he met with Defendant and reviewed the conditions of his release, to which Defendant acknowledged his understanding and signed a form containing the conditions.

Probation Officer Donoho testified that one of the conditions of Defendant's supervision required he not associate with any persons convicted of a felony unless the Probation Officer has granted him permission to do so.  Probation Officer Donoho stated he told Defendant he was amenable to him associating with family members who had previously been convicted of a felony, but Sullivan must notify him of the contact in advance and should report the contact on his monthly reports.

The Probation Officer testified he received a phone call from an officer with the Cincinnati Police Department, reporting that on February 7, 2016, he stopped a vehicle being driven by Defendant for a window tint violation.  The police officer explained that Defendant had three passengers in the car with him: Maurice Walters, Defendant's cousin; Seyni Hamani, Defendant's friend; and Chaaz Hill, Defendant's eldest son.  The police officer notified Probation Officer Donoho

that Walters had a small amount of marijuana hidden in his pants, along with a pocket scale.  In addition, all three passengers had large amounts of cash on their persons–Defendant had $3,000. Officer Donoho testified he discovered that Mr. Walters was a convicted felon, being convicted in 2000 for aggravated armed robbery and two counts of robbery in Hamilton County Common Pleas Court.  He stated that Defendant had not requested or obtained permission to associate with Mr. Walters and had not listed him on his monthly report as an individual with whom he associates who has a criminal record.

The Probation Officer also stated that while Defendant was not arrested or cited for the incident on February 7, 2016, Defendant did not report the contact with law enforcement to him as Defendant is required to do by the conditions of his release.  Probation Officer Donoho explained that on February 12, 2016, he called Defendant to check in with him and Defendant said he had nothing new to report.  Despite Officer Donoho asking him generally how things were going and how he was doing financially, Defendant did not voluntarily report the February 7, 2016, incident or that he had $3,000 on his person.

The Probation Officer also testified that Defendant has a condition on his release to refrain from excessive use of alcohol and not to possess or use any controlled substance.  He explained Defendant was given random drug testing throughout his release, and his most recent urine specimen on February 16, 2016, was determined by a laboratory to be both dilute and positive for marijuana. He also testified about Defendant's five prior positive marijuana drug screens in August and September 2015.  Officer Donoho stated that after these 2015 positive drug tests he asked Defendant if he wanted drug treatment.  The Probation Officer stated that Defendant rejected the offered

treatment, and was not otherwise directed to go to treatment.  Defendant tested clean for the next several months.

On cross-examination, the Probation Officer explained he did not have Defendant on a specific schedule for reporting, but stated Defendant is required to submit monthly reports and to participate in the random drug screening procedure.  The Probation Officer testified he found Defendant amenable to his attempts to contact him, he knows where Defendant is living and who he is living with, and also knew he had started barber college.

With respect to defense counsel's questioning, Mr. Donoho explained that if there is a happenstance where a relative who is a convicted felon would show up at Defendant's location unexpectedly, Defendant can associate with him but must report the contact on his monthly report. Probation Officer Donoho stated that had the February 7, 2016, contact been the only instance of Defendant having contact with Mr. Walters, Defendant would not be in violation of his probation since his monthly report for February was not yet due.  However, he testified Sullivan told him during their conversation that he was in regular contact with Mr. Walters and had been associating with Mr. Walters for months.

Officer Donoho testified that based on this representation, he reviewed Defendant's past monthly reports and found that Defendant had never reported his contacts with Mr. Walters.  He stated that even after their discussion about Mr. Walters, Defendant submitted a monthly report on February 16, 2016, on which he checked "no" next to the question that asked whether Defendant had contact with anyone with a criminal record.  Upon Officer Donoho's questioning, Defendant changed his answer on the report and provided Mr. Walters's name and relationship.

6

Officer Donoho also stated that on February 16, 2016, Defendant reported to having recently found employment, but the Officer had not yet verified the information or requested to see his pay stubs.  On redirect, Officer Donoho stated that after Defendant was unable to get a job with the iron workers, he had tried to get Defendant to go to a job fair.  Defendant initially reported to Officer Donoho that he went to the job fair, but upon further questioning, he admitted to the Officer that he did not go.

### 2.      Diane Chambers

Diane Chambers, Defendant's paternal aunt, testified at the evidentiary hearing on Defendant's behalf.  She testified that she has regular contact with Defendant, and he has good family support.  She explained that Defendant's mother was murdered, and as a result Defendant helps raise his 14-year-old sister.  Ms. Chambers testified that she helps Defendant financially by giving him money to help him with his sister.  She testified the money she gave to Defendant came from her job and her 401k.

Ms. Chambers also testified that Mr. Walters is her nephew and is employed as an iron worker.  She stated that her father is also an iron worker, and he and Mr. Walters unsuccessfully tried to help Defendant get a job with the iron workers.  She testified Mr. Walters has been employed with the iron workers for at least 10 years, and she thinks Mr. Walters is a positive influence on Defendant.

Ms. Chambers also testified that Defendant was recently awarded shared parenting of his 7-year-old son.  She thinks Defendant is really trying to stay focused raising his sister and his son.  She also stated that Defendant seems to like his new job.  She reiterated Defendant has a lot of family support and the family members live fairly close to each other.  She also testified she knows

7

Defendant's fiancee and thinks she is a good influence–she works a couple of jobs, is in school and is encouraging to both Defendant and his sister.

On cross-examination, Ms. Chambers testified she was not aware of either Mr. Walters or Defendant using marijuana. She testified that during the month of January 2016, she gave Defendant a total of $2,500 to help him care for his sister–she stated she gave him $2,000 early in January 2016, and another $500 a few weeks later. She did not know if Defendant still had the prior $2,000 when she gave him the additional $500; she gave him another $500 because she had previously told him she would. She was not certain of the dates on which she gave Defendant the money, but did not think it was in February 2016.

### 3.    Defendant Jeffrey Sullivan

Defendant testified at the evidentiary hearing on his own behalf. Defendant explained that prior to his release from the half-way house on the underlying matter, he had a job with Economy Linen in Dayton, Ohio. He stated he changed jobs to Mobile Logistics to prepare for release because it was nearer his home in Cincinnati, Ohio. He explained he left Mobile Logistics in May 2015, and tried for about two months to get hired on with the iron workers union. However, he did not get the job. Defendant testified he started barber college, but had to quit to demonstrate he was making money to help get shared parenting for his son. While not made clear, it appears Defendant obtained a job in February 2016. Defendant testified he obtained a new job with Nesco Resource about two weeks prior to the final hearing. A March 15, 2016, letter from the staffing specialist at Nesco Resource was admitted as an exhibit. While the letter does not provide when Defendant started his employment with Nesco, it states Defendant has excellent attendance, is a hard worker, and his onsite manager and other employees have stated he is a great team worker. Defendant testified that

8

even after he told his supervisor about his current situation, the supervisor told Defendant he wants Defendant to stay on the job.

Defendant also testified to his responsibilities in helping to raise his 14-year-old sister.  He also explained that on January 29, 2016, he was awarded shared parenting of his 7-year-old son. Defendant testified that he has his son on Wednesday and Thursday of each week and every other weekend.  He explained he was having difficulties with his son's mother because she is creating problems for him.  Specifically, he testified that she calls his Probation Officer and tells him lies, throws eggs at his house, spits on him, and just wants to cause him problems.

Defendant also testified that he smoked one blunt of marijuana in August 2015, and as a result, he tested positive on multiple drug tests in August and September 2015.  He explained that from September to December 2015, he had 10 drug tests and they all came back negative.  He testified that he stopped smoking to keep his freedom because his family needs him.  He explained he has smoked marijuana since he was 11 years old, and was really bad after his mother died.  He also testified that he has never been offered any substance abuse treatment, and he would have accepted the help if offered.  Defendant testified he will willingly participate in substance abuse treatment.

Defendant also testified to the circumstances of the February 2016 traffic stop for a window tint violation.  Defendant admitted he had cash on him at the time of the stop.  He stated that $500 came from a scratch-off ticket and $2,000 from his aunt to buy clothes and help with his sister. Defendant testified that Mr. Walters was not charged with possessing the marijuana found during the traffic stop.  Instead, Defendant stated the marijuana belonged to Defendant's 19-year-old son,

who was also in the car and has now been charged for marijuana possession.  Defendant admitted he regularly associates with Mr. Walters, and stated he thinks Walters is a good role model for him.

Defendant also admitted he did not call his Probation Officer to report the contact with law enforcement because there were other times when he was pulled over, did not call him, and he was not found to have violated his conditions.  He testified he was negligent because he knew he was supposed to call Mr. Donoho and did not, but he testified that he had planned to report the contact on his next monthly report.

Defendant testified that he thinks he is doing better than he has ever done in his life.  He stated the only problems are associated with his youngest son's mother trying to cause him trouble.  He thinks the Probation Officer started changing toward him when she started calling the officer.

On cross-examination, Defendant testified that in January 2015 he was stopped and cited for possession of marijuana, but he stated the marijuana belonged to his sister and she ultimately claimed ownership.  He stated that he timely reported the January 2015 contact with law enforcement to his Probation Officer.  He said he forgot to call the Probation Officer to report the February 2016 contact, and because he did not get a ticket, was not arrested and was not charged "it really slipped his mind."

He also admitted that his Probation Officer had instructed him to go to a job fair on July 9, 2015, but he did not go.  He said he attempted to go, but did not have bus fare or a vehicle at the time.  He admitted to telling the Probation Officer that he did go to the job fair, but stated he changed his mind mid-sentence, told the Officer he could not lie to him and admitted he did not go.

Defendant also admitted he smoked a marijuana joint in August 2015 and started smoking marijuana again over the last month and a half.  He testified he self-medicated with marijuana

because of all the problems he was having with his son's mother.  He again denied that Officer Donoho ever offered him drug treatment.

Defendant also testified that he did not know Mr. Walters was a felon until he read Officer Donoho's report.  He testified he first met his father's side of the family when he was 21 years old, and thus did not know Mr. Walters at the time he was convicted.  Nevertheless, he admitted that he failed to seek prior permission from his Probation Officer to associate with Mr. Walters.

After taking the stand, and during discussion at the final hearing of his continued release on supervision while awaiting a decision in this matter, Defendant stated he would not test clear if immediately tested.  Defendant admitted to having smoked marijuana after the February 16, 2016, test, stating he stopped about two weeks prior to the hearing.

### B.    Status Conference

As explained above, the Court held a Status Conference on May 5, 2016, to obtain an update on Defendant's supervision since the March 25, 2016, hearing.  Upon the Court's inquiry, Attorney Howe informed the Court, via proffer, that Defendant has continued to work full time with Nesco Resources since the March 25, 2016, Final Revocation Hearing.[3]  Counsel also stated that Defendant continues to have shared parenting of his 7-year-old son and presented the February 3, 2016, Decision of Magistrate for the Hamilton County, Ohio, Juvenile Court, which sets forth the terms of the shared parenting plan.  (R. 471).

In addition, Probation Officer Donoho provided an update on his supervision of Defendant since the Final Revocation Hearing.  Officer Donoho confirmed he authored two 12A Reports on Offender Under Supervision since the March 25, 2016, hearing. (R. 466).  In the April 4, 2016,

---

[3]Counsel stated Defendant works first shift, Monday through Friday.

Report, Officer Donoho reported that Defendant's March 25, 2016, urine specimen returned positive for marijuana. Probation Officer Donoho further reported that during a conversation immediately following the collection of this urine specimen, Sullivan told him that he has smoked marijuana daily since March 9, 2016. (R. 466, at 1). Officer Donoho submitted the March 25, 2016, specimen to the laboratory for analysis. In the March 30, 2016, Alere Toxicology interpretation report, the Director of Toxicology opined that a comparison of the laboratory results from the February 16, 2016, and March 25, 2016, collections indicated reuse after the February 16, 2016, collection. (R. 470).

Officer Donoho also testified to his April 22, 2016, 12A Report, wherein he reported Defendant had submitted urine specimens on April 1, 2016, and April 8, 2016, both of which tested positive for marijuana. Officer Donoho explained he submitted both samples to the laboratory for analysis. The April 14, 2016, Alere Toxicology interpretation report provides that these specimens had a decreasing level of THCA, the primary metabolite from marijuana use, but the Director of Toxicology found the results inconclusive as to whether Defendant had a new use since the March 25, 2016, collection. (R. 470). Officer Donoho further reported that Defendant had two subsequent collections on April 15, 2016, and April 22, 2016, both of which returned negative for any controlled substances. (*Id.*). The Probation Officer testified that Defendant will continue to be required to submit to weekly drug screens while these current charges remain pending.

Further, Officer Donoho also informed the Court that Sullivan had reported continued problems with his son's mother, who had recently obtained a temporary protection order from a Hamilton County, Ohio court. Officer Donoho did not know the status of that order, but stated he

12

counseled Defendant not to be alone with the mother and to involve another person when exchanging custody of the child.

Lastly, Officer Donoho confirmed that despite his report contained in the October 7, 2015, Petition for Summons for Offender Under Supervision (R. 449) that "Sullivan is attending weekly group treatment at IKRON Inc.," Defendant has not received drug treatment. Officer Donoho explained that he offered Sullivan treatment but did not require him to attend, and Sullivan declined the offer, stating he could stop on his own.

### C.   Factual Findings

The Court, having heard and observed the witnesses, finds the testimony of Probation Officer Donoho and Ms. Chambers credible. Probation Officer Donoho has no reason to be anything but truthful with the Court. While Ms. Chambers has an interest in helping Defendant with his current circumstance based on their family relationship, the Court believes her testimony that she provides Defendant with financial assistance to help with the expenses of caring for his younger sister.

The Court finds Defendant's testimony sincere to the extent he testified to his desire to maintain his freedom so he can continue to care for his sister and 7-year-old son. The Court also believes Defendant has recently secured employment that appears to offer him some stability and an opportunity to succeed based on the letter received into evidence from the staffing specialist at Nesco Resource. The Court's belief was substantiated at the Status Conference with counsel's representation that Defendant is still employed at Nesco Resource on a full-time basis.

The Court is concerned, however, with several statements it finds not credible. First, Defendant's testimony as to the source of the $3,000 found on his person during the February 7, 2016, traffic stop is not credible. The Probation Officer testified that as of February 7, 2016,

13

Defendant had not reported having a job after March 2015.  Defendant's testimony that $500 was from a scratch-off and $2,000 was from his aunt's generosity nearly a month earlier is suspect.  If, as Defendant seems to infer, the bulk of the money was from his aunt for the care of his sister, one would expect some of the money to have already been spent providing for his sister and the remainder would not simply be pocket money for a Sunday afternoon.  Further, even giving Defendant's testimony some credence in this regard, his explanation fails to account for the entire amount the police officer reported to Probation Officer Donoho that Defendant had on his person–$3,000.

In addition, the Court finds Defendant's testimony for why he did not report the February 7, 2016, contact with law enforcement to his Probation Officer to be inconsistent.  Defendant testified on direct examination that he was negligent in not reporting the February 7, 2016, contact with law enforcement to his Probation Officer.  He admitted he knew he was supposed to call Mr. Donoho and did not, but explained he had planned to report the contact on his next monthly report.  However, he testified on cross-examination that he forgot to contact his Probation Officer, and it further "slipped his mind" because he did not get a ticket, was not arrested, and was not charged.  The Court does not find Defendant's testimony credible that he simply forgot to report the incident.  Instead, the circumstances described suggest Defendant may have been hopeful that absent being cited, charged, or arrested, the Probation Officer would not learn of the contact.  This is further supported by the fact that even after the Probation Officer called Defendant and asked whether he had anything new to report, Defendant did not voluntarily report the traffic stop.  It was not until the Probation Officer told Defendant of the phone call with the police officer that Defendant told his Probation Officer that he intended to report it on his monthly report.

14

Further, the Court is concerned with Defendant's statement on cross-examination that he did not know Mr. Walters was a convicted felon until his Probation Officer made his Report.[4]  If this were true, Defendant would have told his Probation Officer of this fact when his Probation Officer questioned him about associating with Mr. Walters without first obtaining permission.   The Probation Officer did not testify to Defendant's explanation, but instead testified that Defendant told him he had been associating with Mr. Walters for months.  It was this explanation that prompted Officer Donoho to review all of Defendant's prior reports to see if he had reported his contacts with Mr. Walters on his prior monthly reports.

Moreover, Probation Officer Donoho testified that even after their conversation about Mr. Walters, Defendant submitted a monthly report on February 16, 2016, wherein he checked "no" to the question asking whether Defendant had been in contact with anyone with a criminal record. Upon Officer Donoho's questioning, Defendant changed his answer on the report and provided Mr. Walters's name and relationship.  Thus, as of at least February 16, 2016, Defendant was aware that Mr. Walters was a felon, which is in direct contradiction to his statement that he did not learn of Mr. Walters's status as a convicted felon until Mr. Donoho made his report.

Further, considering the conflict in the testimony as to whether Defendant was offered substance abuse treatment, the Court credits Probation Officer Donoho's testimony over that of Defendant.  Again, Probation Officer Donoho has no reason not to be truthful with the Court. Further, it does not make sense that treatment would not at least be discussed after five consecutive

---

[4]It is not clear to which report Defendant is referring as Probation Officer Donoho authored both a March 4, 2016, Supervised Release Violation Report (R. 458) and a Petition for Warrant or Summons for Offender Under Supervision, which his supervisor dated February 25, 2016, and the District Judge signed and filed on March 2, 2016 (R. 454).  For purposes of this Report and Recommendation, the Court will use the date most favorable to Defendant–February 25, 2016.

positive drug tests.  In addition, at the May 5 Status Conference, Probation Officer Donoho testified that after the March 25, 2016, hearing, he told Defendant he had reviewed his notes of a telephone call he had with Defendant in September 2015, which notes indicated that he did, in fact, offer Defendant substance abuse treatment.  The Officer stated Defendant shrugged his shoulders in response and said "You're probably right."  (R. 466).  Thus, the Court finds Probation Officer Donoho's testimony more credible on this point.

Lastly, the Court also questions the veracity of Defendant's repeated assertions that all of his positive drug screens during August and September of 2015 were from smoking "one blunt" in August 2015.  In the Petition for Warrant or Summons for Offender under Supervision filed on October 7, 2015, Probation Officer Donoho reported to the Court that Alere Toxicology submitted an interpretation report that indicated it believed Defendant reused prior to the collection on August 28, 2015. (R. 449).  The Court does find of import that Defendant tested clean on all 10 drug screens from October to December 2015; however, his continued insistence that the positive drug screens in August were from one blunt negatively reflects on a determination of his credibility.

In order to find a violation of supervised release, the Government must prove by a preponderance of the evidence that Defendant violated a condition of his supervised release.  18 U.S.C. § 3583(e)(3).  Based on the evidence presented at the hearing, the undersigned finds that the Government has proven by a preponderance of the evidence that Defendant violated the conditions of his supervised release, as set forth in Violations 1 through 3 in the March 4, 2016, Supervised Release Violation Report.  In fact, Defendant admitted to the facts of these violations.

First, Defendant admitted to regularly associating with Mr. Walters, who is a convicted felon, without getting prior permission or reporting it on his monthly reports.  While Defendant claims he

did not know he was a convicted felon prior to the Probation Officer's report, he understood it was important for him to learn whether people he associated with were convicted felons and to obtain permission before associating with them. Further, to the extent Defendant may argue he did not knowingly violate this condition, as explained above, the Court does not credit his testimony that he did not know Mr. Walters was a convicted felon.

Second, Defendant admitted he did not report his February 7, 2016, contact with law enforcement to his Probation Officer within 72 hours. Despite Defendant's excuses for not reporting this contact, he admitted he did not comply with the condition.

Third, Defendant did not rebut the Probation Officer's testimony regarding his positive drug screen on February 16, 2016. In fact, he admitted to smoking marijuana, allegedly having just quit about two weeks before the Final Hearing, which would be on or about the date he appeared for his initial appearance on this violation. Even giving Defendant the benefit of the doubt that he stopped smoking marijuana after appearing before the undersigned for his initial appearance, his statement suggests his receipt of the Summons to appear on these supervised release violations did not curb his illegal activity.[5] (*See* R. 456 (summons served on Defendant March 3, 2016)). The Court finds the Government has met its burden as to all three violations and will therefore recommend that the District Judge find Defendant violated the conditions of his release.

## II.     Sentencing

### A.     Legal standard and sentencing guidelines

---

[5]Moreover, the Probation Officer reported that Defendant admitted after the March 25, 2016, hearing to having smoked marijuana daily since March 9, 2016. (R. 466).

The Court may revoke a term of supervised release after finding that a defendant has violated a condition of supervised release.  *See* 18 U.S.C. § 3583(e)(3).  The Court must revoke a defendant's supervised release where the defendant is found to have possessed a controlled substance, *see* 18 U.S.C. § 3583(g).  Application Note 6 to Section 7B1.4 of the Guidelines, however, provides that a court can consider in the case of a defendant with a failed drug test whether the availability of appropriate substance abuse programs warrants an exception from the requirement of mandatory revocation and imprisonment.   *See* U.S.S.G. § 7B1.4, app. note 6 (*citing* 18 U.S.C. §§ 3563(a), 3583(d)).

The Court is also mindful of the need to impose a sentence that is sufficient, but not greater than necessary, to comply with the purposes set forth in 18 U.S.C. § 3553(a).  *See id.* § 3583(e).  Accordingly, in making a determination of an appropriate sentence, the sentencing court is to consider:

1.  The nature and circumstance of the offense and the history and characteristics of the Defendant, *see* 18 U.S.C. § 3553(a)(1);

2.  The need for the sentence imposed to afford adequate deterrence to criminal conduct, *see* 18 U.S.C. § 3553(a)(2)(B); to protect the public from further crimes of the Defendant, *see* 18 U.S.C. § 3553(a)(2)(C); and to provide the Defendant with needed educational or vocational training, medical care, or other corrective treatment in the most effective manner, *see* 18 U.S.C. § 3553(a)(2)(D);

3.  The kinds of sentence and the applicable sentencing range established in the United States Sentencing Commission's Sentencing Guidelines, any amendments thereto, and any associated policy statements made by act of Congress or issued by the Sentencing Commission and in effect on the date the Defendant is sentenced, for a violation of a term of supervised release, *see* 18 U.S.C. § 3553(a)(4),(5);

4.  The need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct, *see* 18 U.S.C. § 3553(a)(6); and,

18

5.      The need to provide restitution to any victims of the offense, *see* 18 U.S.C. § 3553(a)(7).

18 U.S.C. §§ 3583(e) and 3553(a); *see also United States v. Williams,* 333 F. App'x 63, 69 (6th Cir. 2009).  In determining an appropriate sentence, the applicable policy statements in the Sentencing Guidelines, *see* United States Sentencing Guidelines (U.S.S.G.) Chapter 7, Part B, and the factors set out in 18 U.S.C. § 3553(a) must be considered.  The undersigned has carefully considered the factors listed in 18 U.S.C. §§ 3583(e) and 3553(a).

Here, considering that Defendant's underlying criminal offense is a Class A felony, the maximum term of incarceration upon revocation of supervised release is five years.  *See* 18 U.S.C. § 3583(e)(3).  Section 7B1.4 of the Sentencing Guidelines suggests a revocation range of imprisonment of 7 to 13 months, based upon Defendant's criminal history category of V and violations being Grade C.  Defendant may also be placed back on supervised release following any term of imprisonment that is imposed upon revocation.  The maximum term of further supervised release under the statute would be life because the term of supervised release authorized by statute for the offense that resulted in the original term of supervised release provides no maximum period of time that a defendant can be placed on supervised release.  *See* 18 U.S.C. § 3583(h); 21 U.S.C. § 841(b)(1)(A).

**B.      Summary of arguments of counsel regarding sentencing**

At the Final Revocation Hearing, the Court asked counsel to address the appropriate sentence if it were to find Defendant violated his supervised release.  AUSA Bracke argued that a term at the high end of the Guideline range was appropriate, i.e. 13 months, given the Probation Officer's efforts to assist Defendant, Defendant's lack of candor with his Probation Officer, and to protect the public from Defendant's propensity to engage in illegal behavior.  The Government also argued that after

a period of incarceration, Defendant should be required to serve the remaining time of his supervised release as originally imposed because he is in need of assistance to make the transition into society. AUSA Bracke also noted that if Defendant's Probation Officer should determine Defendant is doing well and is no longer in need of supervision, the Officer can petition the Court for early release from supervision. The Government also asked that an additional condition of Defendant's supervision be added to require he maintain verifiable employment.

Defense counsel argued that if Defendant is found to have violated his supervision, there is no benefit to incarcerating him. He pointed out Defendant's violations stem from a traffic stop for an alleged window tint violation where he was found to have a large amount of money on him. Counsel noted there is no law against carrying $3,000 in cash on your person. He also noted that the felon who was in the car during the stop is a family member who was convicted in 2000, has since turned his life around, has maintained employment with the iron workers' union, and was helping Defendant by trying to get him on with his union. Counsel also argued it was inconsistent for the Government to argue Defendant is not credible when his credibility was not challenged in the course of prosecuting the original conspiracy charges.

Counsel further argued Defendant has come a long way since he was released. Specifically, he has gone from serving a term of imprisonment to having a court award him shared parenting of his young child, he has a job that he enjoys, and he is willing to undergo substance abuse treatment. Counsel also pointed to Defendant's life circumstances, including having his mother killed, as providing some support for his need for treatment. Thus, defense counsel argued an appropriate sentence would be to require Defendant to undergo substance abuse treatment as this sentencing option permits Defendant to continue with the positive steps he has taken to get his life on track.

Specifically, counsel argued treatment will permit Defendant to continue with his employment, take care of his son, and permit his family members the opportunity to continue offering their support.

## III.   Discussion

Upon consideration, the undersigned recommends that Defendant's supervised release be modified to include 14 weekends of intermittent confinement at a Bureau of Prisons approved facility closest to his home in Cincinnati, Ohio.  The confinement should be ordered served on an every other weekend basis to accommodate Defendant's parenting and work schedules.  In addition, the undersigned further recommends that the Probation Officer direct Defendant to attend a substance abuse treatment program without regard to whether Defendant thinks such treatment is necessary.[6]  The Court finds the availability of an appropriate substance abuse program and Defendant's lack of treatment thus far warrants the exception for a defendant with a failed drug test from the requirement of mandatory revocation under 18 U.S.C. § 3583(g) and § 7B1.3(a)(1) of the Sentencing Guidelines.  *See* 18 U.S.C. § 3583(d); U.S.S.G. § 7B1.4 app. note 6.

Specifically, while the Court has concerns about Defendant's lack of candor and his attempt to "walk to the line" of what is compliant behavior,[7] the record reveals he has not been "directed"

---

[6]As Defendant is subject to the standard condition that he shall work regularly at a lawful occupation, unless excused by the Probation Officer for schooling, training, or other acceptable reasons, the Court will not recommend the Government's request for an additional condition requiring he maintain verifiable employment.

[7]The Court also finds the testimony regarding the circumstances of the February 7, 2016, traffic stop to be concerning.  While no state charges were filed, the facts suggest not only that marijuana was being used, but that marijuana trafficking was also occurring.  Further, the fact Defendant's 19-year-old son was in the car, carrying a large amount of cash, and, according to Defendant, was responsible for the marijuana found in the car, demonstrates that this young man is either involved or, at a minimum, is being exposed to illegal conduct by, or with the permission of, his father.  Defendant should remember his lifestyle choices model behavior for his children and expose them to circumstances that can have a lasting impact on their lives.

to treatment.  The Court's recommendation to modify the conditions of Defendant's supervision is not intended to minimize the credibility findings above.  Instead, in the interest of progressive punishment for supervised release violations, revocation is premature given the evidence demonstrating Defendant is in need of substance abuse treatment, but has not had the benefit of such a program.

In addition, Defendant is demonstrating efforts to positively move his life forward. He has obtained and maintained employment and is participating in the shared parenting of his 7-year-old son.  Further, since March 25, 2016, Defendant's weekly drug tests have demonstrated a continuing decrease in THCA values with the last two tests returning negative for any illegal substances.  Thus, Defendant appears to be dedicated to making better life choices for the benefit of himself and his family.  Fourteen weekends of incarceration shall serve as both a reminder of the importance of compliance and a deterrent from further violations, but will provide Defendant an opportunity to continue in the shared parenting of his son and continue with his employment. Therefore, the modification of Defendant's terms of supervision to include 14 weekends of imprisonment and to require he participate in substance abuse treatment is appropriate.

The Court emphasizes that Defendant is being given a substantial break, and there should be no misunderstanding going forward of the importance of him fully complying with all conditions of his supervised release.  To be successful, Defendant needs to embrace and actively participate in his treatment program, continue with his employment, and make positive life choices to create a nurturing environment for his family.  Defendant is hereby notified that further violations, particularly those involving substance abuse and/or not being forthright with his Probation Officer, will be a great disappointment and will not be looked upon favorably.

### IV.     Conclusion and Recommendations

In conclusion, after a thorough review of Defendant's Presentence Investigation Report, the factual circumstances of the violations, and the case record, **IT IS RECOMMENDED** that:

1.      Defendant, **JEFFREY SULLIVAN,** be found to have **VIOLATED** the terms of his supervised release as set out in the March 4, 2016, Supervised Release Violation Report;

2.      Defendant remain on supervised release subject to all standard and special conditions previously imposed and with his supervised release **MODIFIED** to add the special condition that Defendant serve fourteen (14) weekends of intermittent confinement, every other weekend to accommodate his parenting schedule, with confinement to begin Friday evenings at 7:00 p.m. and end on Sunday evenings at 7:00 p.m., or as directed by the facility and Probation Office.  Defendant is to report to the facility when directed.  Defendant's intermittent confinement shall be served, if feasible, at the Bureau of Prisons approved facility closest to his Cincinnati, Ohio, home;

3.      Defendant shall also be directed to a substance abuse treatment program by the Probation Office, without regard for whether he thinks such a program is necessary;

4.      The Court set the matter for an allocution hearing, Defendant having preserved his right to allocute, unless Defendant notifies the Court in writing within **fourteen (14) days** of this Report and Recommendation that he wishes to waive allocution to the District Court prior to final sentencing.

Specific objections to this Report and Recommendation must be filed within **fourteen (14) days** of the date of service or further appeal is waived.  28 U.S.C. § 636(b)(1)(C); Fed. R. Crim. P. 59(b)(2); *Thomas v. Arn*, 728 F.2d 813, 815 (6th Cir. 1984), *aff'd*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).

Dated this 23rd day of May, 2016.



**Signed By:**

**_Candace J. Smith_**

**United States Magistrate Judge**

I:\DATA\S.R. violations R&R\08-49-DLB Sullivan R&R final.wpd